1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOESCAN, INC., a Washington corporation,

　　　　　　　　　Plaintiff,

　　　v.

LMI TECHNOLOGIES, INC.,

　　　　　　　　　Defendant.

Case No. C07-5323RJB

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR LACK OF
PERSONAL JURISDICTION AND
IMPROPER VENUE

This matter comes before the court on Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Improper Venue.  Dkt. 20.   The Court has considered the relevant documents and the remainder of the file herein, and has determined that oral argument is not necessary.

I. PROCEDURAL HISTORY

On July 5, 2007, JoeScan, Inc. ("JoeScan") filed this case against LMI Technologies, Inc. ("LMI") for Declaratory Judgment of Patent Non-Infringement, Invalidity and Unenforceability and for an Injunction.  Dkt. 1.  On July 23, 2007, LMI filed a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Improper Venue.  Dkt. 20.

II. BACKGROUND

Plaintiff JoeScan is a Vancouver, Washington corporation.  Dkt. 36 at 2.  JoeScan  designs,

ORDER
Page - 1

1  manufactures and sells the JS-20, a laser scanning device for the wood products industry.  *Id*.  Nelson

2  Bros. Engineering, LLC ("NBE"), in Trout Lake, Washington, is one of JoeScan's distributors.  *Id.* at 3.

3      Defendant LMI is a foreign corporation with its global headquarters located in the city of Delta,

4  British Columbia, Canada.  Declaration of Neil Hummel ("First Hummel Decl."), Dkt. 21 at ¶ 3.  LMI is

5  the owner of an extensive patent portfolio related to vision sensor technology, which includes the three

6  patents at issue: U.S. Patents No. 5,670,787; 5,734,172; and 5,854,491.  Dkt. 36 at 2.  LMI filed a patent

7  infringement lawsuit in the Western District of Pennsylvania on May 2, 2007, against NBE as well as Kane

8  Hardwood, a NBE customer.  First Hummel Decl. ¶ 8.

9      Wagstaff, a Washington company, sells laser sensors for use in the metal foundry industry.  Dkt. 36

10  at 4.  The parties dispute the relationship between Wagstaff and LMI.  JoeScan claims that Wagstaff is an

11  exclusive worldwide distributor of products covered by LMI's patented technology.  Dkt. 36 at 6.  LMI

12  claims that Wagstaff is a distributor for LMI Ireland, a wholly-owned subsidiary of LMI.  Third

13  Declaration of Neil Hummel ("Third Hummel Decl."), Dkt. 44 at ¶¶ 3-4.

14      Digitron Electronics, LLC, ("Digitron") is a customer of LMI located in Washington.  Dkt. 43 at 8,

15  n.2.  LMI has sold and continues to sell sensors to Digitron.  *Id*.

16

17                    III. DISCUSSION

18  **A. Jurisdiction**

19      A court may exercise either specific or general jurisdiction over a defendant.  However, JoeScan

20  conceded that "the Court need not address general jurisdiction".  Dkt. 36 at 9.  Thus, the Court should

21  only consider specific jurisdiction.

22      A court may exercise specific jurisdiction where the suit "arises out of" or is related to the

23  defendant's contacts with the forum and the defendant "purposefully avails itself of the privilege of

24  conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger*

25  *King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

26

27      **1. Specific Jurisdiction**

28      If the defendant challenges a court's jurisdiction before the parties have engaged in discovery, then

ORDER
Page - 2

1    the court should construe the  plaintiff's factual allegations in the light most favorable to the plaintiff.

2    *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  And, plaintiff is

3    required only to make a prima facie showing of personal jurisdiction.  *Id.*  In this case, JoeScan and LMI

4    have not yet conducted discovery; therefore, the Court should only require JoeScan to make a prima facie

5    case for the Court to exercise jurisdiction over LMI.

6          When the claims for relief involve patent law, this Court's jurisdiction is controlled by the law of the

7    Federal Circuit.  *Id.*  The Federal Circuit has held that whether an exercise of specific personal jurisdiction

8    satisfies due process in a patent case depends on three factors: (1) whether the defendant "purposefully

9    directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the

10   defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and

11   fair".  *Id.* at 1201-1202, *citing Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359, 58 U.S.P.Q.2d 1774 (Fed.

12   Cir. 2001).

13         In addition, under the law of the Federal Circuit, the sending of cease and desist letters threatening

14   infringement litigation does not, without more, confer personal jurisdiction. *Id.*, *citing Red Wing Shoe Co.*

15   *v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). In *Red Wing*, the Court

16   acknowledged that such letters satisfied the first two prongs of the test, but explained that finding them to

17   confer personal jurisdiction would violate the third:

18         Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of
           its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not
19         subject itself to personal jurisdiction in a forum solely by informing a party who happens to be
           located there of suspected infringement. Grounding personal jurisdiction on such contacts alone
20         would not comport with principles of fairness.

21   *Red Wing*, 148 F.3d at 1360-61.  However, personal jurisdiction can be partly based on the sending of

22   cease and desist letters if there are "other activities" directed at the forum which are distinct from the

23   threats of infringement litigation. *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350, 67

24   U.S.P.Q.2d 1940 (Fed. Cir. 2003); *Inamed Corp.*, 249 F.3d at 1360.

25         The Federal Circuit has found that "other activities" by a defendant that support jurisdiction

26   include: (1) the defendant-licensor granting a patent licensee the right to litigate infringement claims, *Akro*

27   *Corp. v. Luker*, 45 F.3d 1541, 1546, or (2) if an exclusive licensee (or licensee equivalent) with which

28   defendant has established a relationship is not headquartered in the forum state, but nonetheless conducts

ORDER
Page - 3

1   business there.  *Genetic Implant Systems v. Core-Vent Corp.*, 123 F.3d 1455, 1457-59 (Fed. Cir. 1997).

2       The Court should construe JoeScan's factual allegations in the light most favorable to JoeScan.

3   *Silent Drive*, 326 F.3d at 1201.  JoeScan alleges that LMI sent JoeScan multiple cease and desist letters as

4   well as a draft complaint for a patent infringement action in the Western District of Washington.  Dkt. 36

5   at 6.  LMI does not challenge these allegations.  Dkt. 20; Dkt. 43.  Therefore, the Court should find that

6   JoeScan has met its burden for the first two prongs of the test for specific jurisdiction.  The remaining

7   question before the Court is whether LMI has such "other activities" that will confer jurisdiction.  *Coyle*,

8   340 F.3d at 1350.

9

10          **a. LMI's Distributorship Agreement With Wagstaff Relating to Selcom Products**

11      JoeScan argues that LMI has "other activities" that confer jurisdiction.  Dkt. 36 at 10.  First,

12  JoeScan alleges LMI has an exclusive distributorship agreement for Selcom sensors with Wagstaff.  *Id*.  In

13  support of this allegation, JoeScan has provided the Court with a Wagstaff press release that states

14  "Wagstaff, Inc., [is] the exclusive worldwide distributor of Selcom products" and the products are

15  comprised of "[t]he patented LMI technologies design, integrated with the Wagstaff, Inc., AutoCast

16  automated casting control system...".  Declaration of William Birdwell in Support of Plaintiff's Response

17  to Defendant's Motion to Quash Service ("Birdwell Dec."), Ex. #12 at 4-5.  And, JoeScan has provided

18  the Court with a Selcom product description stating that the product is covered by one or more of the

19  patents in this suit and listing as the "Head Office" LMI's Delta, British Columbia location.  Birdwell Dec.,

20  Ex. #10.

21      On the other hand, LMI argues that the exclusive distributorship agreement is between Wagstaff

22  and LMI Ireland, a corporation separate from LMI.  Third Hummel Decl., ¶¶ 3-4.  However, LMI does not

23  produce any other evidence to support its argument.  *Id*.  And, although the product description produced

24  by JoeScan lists an LMI office in Sweden and an LMI office in the Netherlands, the document does not

25  refer to an LMI office in Ireland.  Birdwell Dec., Ex. #10.

26      In addition to the separate corporate form argument, LMI argues that LMI Ireland makes and sells

27  its products in a completely unrelated industry from LMI.  Dkt. 43 at 5.  Specifically, LMI states that "the

28  sensors LMI Ireland distributes through Wagstaff are for the aluminum foundry industry and have nothing

ORDER
Page - 4

1   to do with the *products* at issue in this case." *Id.* (emphasis added).  However, LMI's argument incorrectly

2   addresses specific products and not the three patents at issue in this case.  Even if the aluminum foundry

3   sensors are used in a different industry than the wood scanning sensors, LMI asserts that the Selcom

4   sensors are manufactured under one or more of a group of US patents that includes the patents at issue in

5   this case.  Birdwell Dec., Ex. #10 (Selcom product information).

6        Therefore, the Court should find that JoeScan has made a prima facie case that LMI has entered

7   into an exclusive distributorship agreement with a Washington company, Wagstaff, and that the agreement

8   covers the patents at issue in this case.  Because of this agreement, the defendant has "other activities"

9   directed toward Washington that are distinct from the cease and desist letters, and the Court should

10  exercise personal jurisdiction over LMI.

11

12           **b. Other Washington Contacts**

13       In addition to the exclusive distributorship agreement, JoeScan argues that LMI has specific

14  business activities with customers in Washington that the Court should consider as "other activities".  Dkt.

15  36 at 10.  JoeScan alleges LMI has attended two trade shows in Washington, *Id.*, and has presented a

16  brochure from one wood machine trade show that lists LMI as a participant.  Birdwell Dec., Ex. #13.

17  Although LMI initially stated that it had "never attended" a trade show in Washington (Dkt. 20 at 6, line

18  20), LMI later clarified that it currently "does not attend" (present tense) trade shows in Washington.  Dkt.

19  43 at 8, n.3.  Further, LMI states that the trade shows LMI did attend were in 2001 and 2002, occurrences

20  that are simply part of sporadic and isolated contacts with Washington.  Dkt. 43 at 7-8.  However, LMI

21  does not address the fact that the patents at issue in this case were issued in 1997 and 1998, years before

22  either trade show was held, or the fact that the presentations at the shows were for laser scanning

23  technologies (*see* Birdwell Dec., Ex. #13. at 2; Dkt. 26 at 6-7).  Dkt. 20; Dkt. 43.  Thus, even though LMI

24  may not currently attend trade shows in Washington, the Court should find that plaintiff has made a prima

25  facie showing that LMI advertised the patented technology in Washington.

26       Additionally, LMI has sold laser scanning products to a Washington customer, Digitron.  Dkt. 43 at

27  8, footnote 3.  LMI argues that its sales to Digitron represents only 0.156% of LMI's global business.  *Id.*

28  In other words, LMI asks the Court to consider LMI's contacts with Digitron from the wrong point of

1   view.  Under the third prong of the test for specific jurisdiction, the Court should consider "other

2   activities" directed at the forum state.  *See Coyle*, 340 F.3d at 1350.  Contrary to LMI's argument, the

3   global significance of these particular sales is irrelevant for purposes of specific jurisdiction.  Therefore, the

4   Court should find that JoeScan has made a prima facie case that LMI has sufficient specific contacts within

5   Washington that constitute "other activities" for purposes of specific personal jurisdiction.

6

7   **B. Venue**

8          Under 28 U.S.C. § 1391(c), venue is proper for an action against a corporation "in any

9   judicial district in which it is subject to personal jurisdiction."  *North American Phillips Corp. v.*

10  *American Vending Sales, Inc.*, 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994) (venue is proper if

11  personal jurisdiction exists).  Because the Court should find that personal jurisdiction exists over LMI, the

12  Court should also find that venue is proper.

13

14                              IV. ORDER

15         Therefore, it is hereby

16         **ORDERED** that the Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal

17  Jurisdiction and Improper Venue (Dkt. 20) is **DENIED**.

18         The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

19  party appearing *pro se* at said party's last known address.

20         DATED this 5th day of September, 2007.

21

22

23                              Robert J. Bryan

24                              ROBERT J. BRYAN
                                United States District Judge

25

26

27

28

ORDER
Page - 6